FILED

DEC 26 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| ALFRED BONE SHIRT, BELVA BLACK LANCE, BONNI HIGH BULL, and GERMAINE MOVES CAMP,<br><br>  Plaintiffs,<br><br>  v.<br><br>JOYCE HAZELTINE, in her official capacity as Secretary of State of the State of South Dakota; SCOTT ECCARIUS, in his official capacity as Speaker of the South Dakota House of Representatives; the SOUTH DAKOTA HOUSE OF REPRESENTATIVES; ARNOLD BROWN, in his official capacity as President of the South Dakota Senate; and the SOUTH DAKOTA SENATE,<br><br>  Defendants. | Civil Action No. CIV01-3032 |

## COMPLAINT

### NATURE OF THE CASE

1. This is an action to enforce Sections 2 and 5 of the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 and 1973c. The plaintiffs seek declaratory and injunctive relief against the implementation and use of the newly enacted redistricting plan for the South Dakota Legislature on the grounds that it has not been precleared as required by Section 5 and that it dilutes the voting strength of Native Americans in violation of Section 2.

2. At issue in the plaintiffs' Section 5 claim is whether the State of South Dakota has obtained preclearance before implementing the 2001 legislative redistricting plan. A three-judge district court is required to hear this claim.

3. At issue in the plaintiffs' Section 2 claim is whether District 27 of the 2001 legislative redistricting plan unlawfully 'packs' Indian voters into a single district, thereby depriving them and other Indian voters in the neighboring District 26 of the equal opportunity to participate in the political process and to elect candidates of their choice. This claim must be heard by a single-judge district court.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this case pursuant to Article III of the United States Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

5. This suit is authorized by 42 U.S.C. §§ 1973j(f) and 1983.

6. Pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284, a three-judge district court is required to hear the plaintiffs' Section 5 claim.

7. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in the District of South Dakota pursuant to 28 U.S.C. § 1391(b).

## PARTIES

9. Plaintiffs Alfred Bone Shirt and Belva Black Lance are Native Americans, qualified electors, and residents of Tood County in District 27 of the South Dakota Legislature.

10. Plaintiffs Bonni High Bull and Germain Moves Camp are Native Americans, qualified electors, and residents of Bennett and Jackson counties, respectively, in District 26 of the South Dakota Legislature.

11. The plaintiffs, as American Indians, are members of a language minority and are protected by Section 2 of the Voting Rights Act, 42 U.S.C. §§ 1973, 1973b(f)(2), and 1973aa-1a.

12. The plaintiffs desire to participate in the electoral and political processes of South Dakota on an equal basis with other residents.

13. The plaintiffs reside in an area of the state where a majority Native American legislative district can be drawn.

14. Defendant Joyce Hazeltine is Secretary of State of South Dakota, Secretariat of the State Election Board, and has the duty of supervising elections for the South Dakota House and Senate. She is sued in her official capacity only.

3

15. Defendant Scott Eccarius is Speaker of the South Dakota House of Representatives, one of two branches of the state legislature in which is vested the power to redistrict the state House and Senate. He is sued in his official capacity only.

16. Defendant South Dakota House of Representatives is one of two branches of the state legislature in which is vested the power to redistrict the state House and Senate.

17. Defendant Arnold Brown is President of the South Dakota Senate, one of two branches of the state legislature in which is vested the power to redistrict the state House and Senate. He is sued in his official capacity only.

18. Defendant South Dakota Senate is one of two branches of the state legislature in which is vested the power to redistrict the state House and Senate.

19. The defendants, both personally and through the conduct of their agents, servants and employees, were and are acting under color of state law at all times relevant to this action.

FACTS

20. Article III, Section 5 of the South Dakota Constitution requires the South Dakota Legislature to reapportion its membership "every ten years after 1991."

21. Article III, Section 5 of the South Dakota Constitution further provides that "[h]ouse districts shall be established

4

wholly within senatorial districts and shall be either single-member or dual-member districts as the Legislature shall determine."

22. The state legislature, in making the 2001 redistricting, determined as a matter of policy that protection of minority voting rights was a principle "of primary significance." An Act to provide for redistricting principles for the 2001 legislative redistricting, ___ S.D. Laws ___.

23. Under the redistricting plan enacted by the Legislature in 2001, the South Dakota Senate consists of 35 members elected from single member districts.

24. Under the redistricting plan enacted by the Legislature in 2001, the South Dakota House consists of 70 members, two of whom are to be elected at-large from each senate district, except for District 28 which is divided into two single-member districts, District 28A and District 28B, each of which is to elect one member of the House.

25. The next elections for the South Dakota House and Senate will be held in 2002.

26. The defendants intend to implement the 2001 legislative redistricting plan on or before January 1, 2002, which is the earliest date on which candidates may begin circulating nominating petitions. S.D.C.L. §§ 12-6-4.1 and 12-7-1.1.

27. Shannon County and Todd County in South Dakota are jurisdictions subject to the preclearance requirement of 42 U.S.C. § 1973c.

28. The 2001 legislative redistricting plan enacted by the South Dakota Legislature, insofar as it affects Shannon and Todd counties, is a voting standard, practice or procedure that must be precleared under Section 5 before it can be implemented.

29. Neither the defendants nor the State of South Dakota has submitted the 2001 legislative redistricting plan to the United States District Court for the District of Columbia for a declaratory judgment nor to the Attorney General of the United States for a determination as required by 42 U.S.C. § 1973c.

30. Neither the United States District Court for the District of Columbia nor the Attorney General of the United States has precleared the new redistricting plan pursuant to 42 U.S.C. § 1973c.

31. Given the fact that the 2001 legislative redistricting plan has not been submitted for preclearance, and given the delay invariably associated with judicial and/or administrative preclearance, preclearance of the 2001 legislative redistricting plan prior to its intended implementation, is virtually impossible.

32. The population of South Dakota is 754,844, of whom 62,283, or 8.25%, are Native American.

33. Native Americans are 6.62% of the voting-age population of the state.

34. The population of District 27, which includes all or portions of Shannon, Todd and Bennett counties, is 22,439, of whom 20,176, or 89.9%, are Native American.

35. Native Americans are 86.0% of the voting-age population in District 27.

36. The number of Native Americans in District 27, as a percentage of the population, is substantially higher than necessary to give Native American voters an equal opportunity to participate in the political process and to elect candidates of their choice.

37. The population of District 26, which includes all or portions of Haakon, Jackson, Bennett, Jones, Mellette, Lyman and Tripp counties, is 21,378, of whom 6,444, or 30.1%, are Native American.

38. Native Americans are 23.2% of the voting-age population in District 26.

39. Native Americans in Districts 26 and 27 are sufficiently numerous and geographically compact that they would constitute a majority in one or more Senate Districts and one or more single-member House districts.

40. Native Americans in Districts 26 and 27 are politically cohesive in that they tend to vote as a bloc.

41. Native Americans in Districts 26 and 27 have organized themselves collectively for political activity.

42. Native Americans in Districts 26 and 27 and in South Dakota have common socioeconomic characteristics, a common and distinct history, a common and distinct quasi-sovereign tribal status, a unique political status under the treaties, laws, and executive orders of the United States, and a special trust relationship with the United States.

43. Candidates preferred by Native Americans in District 26 are usually defeated by the white majority voting as a bloc.

44. Historically, Native American residents of Districts 26 and 27 and South Dakota have been subject to private as well as official discrimination on the basis of race, tribal, and language minority status, including discrimination in attempting to exercise their right of franchise and to participate equally with other residents in the political processes.

45. Native American residents of Districts 26 and 27 and South Dakota bear the effects of discrimination on the basis of race and tribal status in education, housing, employment, and health services which have resulted in a lower socioeconomic status which hinders their ability to participate effectively in the political process.

46. Voting in Districts 26 and 27 is racially polarized.

8

47. Because of the at-large method of elections and polarized voting, Native Americans have been discouraged from running for office in District 26.

48. Native Americans in Districts 26 and 27 have less opportunity than other residents to participate in the political processes and to elect candidates of their choice.

49. The existing method of elections for Districts 26 and 27 denies or abridges the right of plaintiffs and Native Americans to vote on the basis of race or color or membership in a language minority.

CLAIM ONE

50. The defendants' failure to preclear South Dakota's 2001 legislative redistricting plan prior to its implementation deprives the plaintiffs of rights guaranteed to them by Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, and by 42 U.S.C. § 1983.

CLAIM TWO

51. The 2001 legislative redistricting plan for Districts 26 and 27 has the result and effect of denying or abridging the right to vote on account of race or color or membership in a language minority in violation of rights guaranteed to the plaintiffs by Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 and by 42 U.S.C. § 1983.

RELIEF

52. A real and actual controversy exists between the parties.

53. The plaintiffs have no adequate remedy at law other than this action for declaratory and injunctive relief.

54. The plaintiffs are suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, the plaintiffs respectfully pray that this Court:

(1) take original jurisdiction over this case;

(2) as a three-judge court, enter a declaratory judgment that by implementing the 2001 legislative redistricting plan before obtaining preclearance, the defendants are in violation of Section 5 of the Voting Rights Act;

(3) as a three-judge court, enter an injunction prohibiting the defendants from implementing the 2001 legislative redistricting plan in Shannon and Todd counties, and in all other counties which may be affected by this litigation, until they have complied with Section 5 of the Voting Rights Act;

(4) as a single-judge court, enter a declaratory judgment that the 2001 legislative redistricting plan for Districts 26 and 27 violates Section 2 of the Voting

Rights Act, and enter a permanent injunction against its implementation and use;

(5) as a single-judge court, enjoin the defendants from conducting any future elections for the state legislature under the 2001 legislative redistricting plan for Districts 26 and 27;

(6) as a single-judge court, enjoin the defendants from failing to conduct elections for the state legislature in Districts 26 and 27 in a timely fashion pursuant to a redistricting plan that complies with Sections 2 and 5 of the Voting Rights Act and the Constitution of the United States;

(7) in the event that the defendants fail or are unable to conduct elections for the state legislature in Districts 26 and 27 in a timely fashion pursuant to a redistricting plan that complies with Sections 2 and 5 of the Voting Rights Act and the Constitution of the United States, implement a court ordered redistricting plan and schedule of elections;

(8) award the plaintiffs the cost of this action together with their reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1973_l_(e) and 1988; and,

(9) retain jurisdiction of this action and grant the plaintiffs any further relief which may in the discretion of this Court be necessary and proper to ensure that timely and lawful procedures are used in elections for the state legislature in Districts 26 and 27.

Respectfully submitted,

_____
BRYAN SELLS
LAUGHLIN McDONALD
NEIL BRADLEY
MEREDITH BELL
American Civil Liberties Union
  Foundation, Inc.
2725 Harris Tower
233 Peachtree Street
Atlanta, Georgia  30303
(404) 523-2721

_____
PATRICK DUFFY
604 Mt. Rushmore Road
Rapid City, SD  57709-8027
(605) 342-1973

ATTORNEYS FOR THE PLAINTIFFS