UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | | |
|---|---|---|
| ALFRED BONE SHIRT; BELVA BLACK LANCE; BONNIE HIGH BULL; and GERMAINE MOVES CAMP, | ) ) ) ) | Civ.  01-3032-KES |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | ORDER GRANTING MOTION |
| vs. | ) ) | FOR ATTORNEYS' FEES AND EXPENSES |
| | ) | |
| JOYCE HAZELTINE, in her official capacity as Secretary of the State of South Dakota; SCOTT ECCARIUS, in his official capacity as the Speaker of the South Dakota House of Representatives; SOUTH DAKOTA HOUSE OF REPRESENTATIVES; ARNOLD BROWN, in his official capacity as President of the South Dakota Senate; and SOUTH DAKOTA SENATE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs move for an order awarding attorneys' fees and expenses

pursuant to D.S.D. LR 54.1, 28 U.S.C. § 1920, and 42 U.S.C. §§ 1973l(e) and

1988.  Plaintiffs, with leave of the court, have supplemented their initial

request.  Defendants (referred to as the State) do not dispute that plaintiffs

are entitled to recover attorneys' fees and costs.  The State does, however,

object to the amount of fees and costs requested.

**BACKGROUND**

In November of 2001, the South Dakota Legislature enacted a state-wide legislative redistricting plan (2001 Legislative Plan).  Plaintiffs filed suit contending that the 2001 Legislative Plan violated §§ 2 and 5 of the Voting Rights Act (VRA).  On January 29, 2002, a three-judge district court held that the plan violated § 5.  See Bone Shirt v. Hazeltine, 200 F. Supp. 2d 1150 (D.S.D. 2002).  Following a nine-day bench trial, the court also held that the plan violated § 2.  Bone Shirt v. Hazeltine, 336 F. Supp. 2d 976 (D.S.D. 2004).

The court gave the State the first opportunity to fashion a new, constitutional apportionment plan; however, after protracted litigation that included a certified question to the South Dakota Supreme Court, the State "respectfully declined to submit a new apportionment plan or a remedial proposal to the Court."  The court then issued a Remedial Order on August 18, 2005, which adopted one of the plans proposed by plaintiffs.  Plaintiffs now seek an award of attorneys' fees and costs.  (Docket 370).

**DISCUSSION**

**I.    Attorneys' Fees**

Pursuant to 42 U.S.C. § 1973l(e),[1] plaintiffs request an award of

---

[1] Plaintiffs also seek an award of attorneys' fees under 42 U.S.C. § 1988(b).  Section 1988, however, does not empower the court to award attorneys' fees for a prevailing party asserting a claim under VRA.  See Dillard v. City of Greensboro, 34 F. Supp. 2d 1330, 1338 (M.D. Ala. 1994), vacated on other grounds by 213 F.3d 1347 (11th Cir. 2000).

attorneys' fees arising out of their successful claim under § 2 of the VRA.[2]
Section 1973l(e) entitles a "prevailing party" to recover reasonable attorneys'
fees as a component of his or her costs.  Prevailing parties should ordinarily
recover reasonable attorneys' fees "'unless special circumstances would
render such an award unjust.'"  Carhart v. Stenberg, 192 F.3d 1142, 1152 (8th
Cir. 1999), aff'd, 530 U.S. 914, 120 S. Ct. 2597, 147 L. Ed. 2d 743 (2000).[3]
"In providing for attorney fee awards in civil rights cases, Congress intended
to 'promote diffuse private enforcement of civil rights law by allowing the
citizenry to monitor rights violations at their source, while imposing the costs
of rights violations on the violators.'"  Emery v. Hunt, 272 F.3d 1042, 1046
(8th Cir. 2001) (quoting Casey v. City of Cabool, Mo., 12 F.3d 799, 805 (8th Cir.
1993)).  "The fee applicant bears the burden of establishing entitlement to the
award and documenting the appropriate hours expended and hourly rates."
Fish v. St. Cloud State Univ., 295 F.3d 849, 852 (8th Cir. 2002).

   The State does not dispute that plaintiffs, who won both their § 2 and
§ 5 claims and who proposed the remedial plan adopted by the court, are
prevailing parties entitled to recover reasonable attorneys' fees.  Instead, the

---

   [2] Plaintiffs previously settled their claims for attorneys' fees and costs
arising out of their action under § 5 of the VRA.  (Docket 51).

   [3] Carhart is a § 1988 case, not a § 1973l(e) case.  This does not matter,
however, because the courts, at least for all purposes relevant here, interpret
the two statutes identically.  See Emery v. Hunt, 132 F. Supp. 2d 803, 805
(D.S.D. 2001) (Emery I), rev'd on other grounds 272 F.3d 1042 (8th Cir. 2001).

State argues that the amount of the fees requested is unreasonable and should be reduced.

In determining a reasonable attorneys' fee award, the court begins by figuring the lodestar, "'which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" Hanig v. Lee, 415 F.3d 822, 824 (8th Cir. 2005); see also Emery v. Hunt, 236 F. Supp. 2d 1033, 1039 (D.S.D. 2002) (Emery II). The court excludes hours unreasonably spent from the lodestar calculation. See Wheeler v. Mo. Highway & Transp. Comm'n, 348 F.3d 744, 754 (8th Cir. 2003). Although the lodestar is presumed to be a reasonable fee, the court may, in some circumstances, adjust the award after considering additional factors. See Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974); see also McDonald v. Armontrout, 860 F.2d 1456, 1459 (8th Cir. 1988). Many of the factors will be accounted for, however, in the lodestar calculation. See Hensley v. Eckerhart, 461 U.S. 424, 432 n.9, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).

## A.    Hourly Rate

The court begins the lodestar calculation by determining a reasonable hourly rate. Plaintiffs request $400 per hour for Laughlin McDonald, $225 per hour for Patrick Duffy, and $200 per hour for Bryan Sells. Plaintiffs also request paralegal rates of $75 per hour for Katie O'Connor and $45 per hour

for Heidi Lunsford.[4]  The requested rates for McDonald, Sells, and O'Connor reflect the market rates in Atlanta, Georgia.

The State does not object to the rates requested for Duffy, O'Connor, or Lunsford, and the court finds that the requested rates are reasonable. Accordingly, the court will calculate the lodestar for Duffy, Lunsford, and O'Connor based upon the requested hourly rates.

The State does object to the rates requested by McDonald and Sells. Specifically, the State argues that the court should use the local market for attorneys to determine the appropriate rate, and that the reasonable local rate for McDonald is $250 to $295 per hour and for Sells is $150 to $185 per hour.  (Docket 396-2, at ¶¶ 21, 23).

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated."  Emery, 272 F.3d at 1048. Sometimes, however, out-of-town counsel will be entitled to a higher rate than the local rate.  See Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982).  "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case."  Emery, 272 F.3d at 1048.  In addition, attorneys

_____

[4]  Plaintiffs can recover reasonable paralegal fees billed at market rates. See Missouri v. Jenkins ex rel. Agyei, 491 U.S. 274, 288, 109 S. Ct. 2463, 2471, 105 L. Ed. 2d 229 (1989).

specializing in complex areas of the law may be entitled to a higher, non-local rate because the attorneys' familiarity with law will enable them to handle the case in a shorter time period than local counsel.  See Planned Parenthood, Sioux Falls Clinic v. Miller, 70 F.3d 517, 519 (8th Cir. 1995).  "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities where the rates are sufficient to attract experienced counsel."  Casey v. City of Cabool, Mo., 12 F.3d 799, 806 (8th Cir. 1993).

Here, the court finds that the lodestar for McDonald and Sells should be calculated using Atlanta rates rather than South Dakota rates.  Plaintiffs present evidence suggesting that no local attorneys would have been willing to take this case without the assistance of the ACLU.  In his affidavit, Duffy, who served as local counsel, stated that he would not have been able to take the case without the resources and assistance of the ACLU, and that, in his opinion, no other local attorneys would have been able to take the case. (Docket 370-2, at 3).  Mike Abourezk, a trial attorney in the Rapid City area, opined that no attorneys in South Dakota would have taken this case without the assistance of the ACLU.  (Docket 371-3, at ¶ 14).  Sells indicated that he even had difficulty finding local counsel for this case.  (Docket 370-4, at 4). The limited number of local attorneys that would be willing to take a voting

rights case of this magnitude supports an Atlanta rate.  See Emery, 272 F.3d at 1048.

More importantly, the court finds that an Atlanta rate is appropriate because McDonald and Sells specialize in voting rights cases.   McDonald is one of the preeminent voting rights attorneys in the United States.  He has been practicing law for 35 years, much of which was in the area of voting rights.  (Docket 370-3. at 4).  He has written several articles, books, and chapters of books on minority voting rights and the VRA.  (Docket 370-3, at 4-7).  He has testified before Congress on voting rights matters.  (Docket 370-3, at 8).  McDonald has appeared as counsel in at least thirty different voting rights cases, including twelve cases before the United States Supreme Court.  (Docket 370-3, at 7-8).  Although Sells has less experience, he too specializes in voting rights cases and has appeared in prior voting rights cases.  (Docket 370-4, at 3).  The court finds that McDonald's and Sells's specialization in voting rights cases makes their Atlanta rates, rather than South Dakota rates, appropriate because their familiarity and specialization with voting rights law enabled this case to be effectively tried in a shorter amount of time.  See Planned Parenthood, Sioux Falls Clinic, 70 F.3d at 519.

Based upon the Atlanta market, the court finds that the requested rate of $400 per hour for McDonald is reasonable.  Plaintiffs presented a 2003 study of the rates charged by Georgia attorneys.  (Docket 370-3, at 32-38).

According to that study, the average rate charged by all attorneys in Georgia was $289 per hour.  The highest rate charged by a partner in a Georgia law firm was $571 per hour, while the highest rate charged by an associate was $350 per hour.  McDonald states that he was recently awarded $400 per hour in a voting rights case in the District of South Carolina.  (Docket 370-6, at 14).  Based on the foregoing, as well as McDonald's extensive experience in voting rights litigation, the court finds that $400 per hour is reasonable.

The court also finds that Sells's requested rate of $200 per hour is reasonable.  Sells indicates that this rate is commensurate with the rate charged by attorneys with similar experience in Atlanta.  (Docket 370-4, at 2).  He also indicates that the Middle District of Georgia recently held that $200 per hour was a reasonable rate in a voting rights case for an attorney who works in Sells's office and has two years less experience than him.  (Docket 370-4, at 2, Docket 370-3, at 23).  As such, the court will calculate  Sells's lodestar based upon an hourly rate of $200.

## B.    Reasonable Hours

The court next determines the reasonable hours expended in litigating the case.  Plaintiffs initially requested 404.45 hours for McDonald, 321.25[5]

---

[5] Duffy lists his hours sought as 357.59.  This is the total hours, however, that he has expended on this case including both the § 5 and § 2 actions.  (Docket 370-2, at 12).  Plaintiffs previously settled their attorneys' fees claim relating to the § 5 action as well as their attorneys' fees claim based on two discovery disputes.  In their brief, plaintiffs properly reduce Duffy's request

8

hours for Duffy, 1,526.18 hours for Sells, 115.25 hours for O'Connor, and 14.5 hours for Lunsford.  (Docket 370-1).  Plaintiffs also filed a supplement seeking an additional 12.36 hours for Duffy and 49.36 hours for Sells. (Docket 404; Docket 405-2; Docket 406-2).

The State does not object to the hours requested by O'Connor.  The court has reviewed O'Connor's hours and finds that 115.25 hours are reasonable.

As for Lunsford, the State objects to 3 hours billed on September 27, 2005.  The entry on that day indicates that Lunsford "Drafted a Declaration of Patrick Duffy along with Preparing Our Billing Statements to accompany The ACLU's Motion for attorneys fees" (Docket 370-2, at 12).  Time spent preparing itemized billing statements is generally a component of office overhead, and thus, unrecoverable.  See Emery, 272 F.3d at 1048.  In contrast, time spent litigating the request for attorneys' fees, including preparation of the motion and accompanying brief may be recoverable.  See Jones v. MacMillan Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982).  Here, however, the entry is so vague that the court cannot determine whether Lunsford's time was spent preparing itemized statements.  Because the court cannot tell how much, if any, of the entry is for recoverable services,

_____

by these previous settlements.  After the reduction, Duffy seeks 321.25 hours that have not yet been paid.  (Docket 371-1, at 4).

the court excludes the entire 3 hours.  See White v. Kelsey, 935 F.2d 968, 970 (8th Cir. 1991) (stating that applicant has burden of documenting that time was not spent on unrecoverable activities).  The rest of Lunsford's hours, however, are reasonable and recoverable.  Accordingly, the court finds that the lodestar for Lunsford will be calculated using 11.5 hours.

As for Duffy, the State asserts two objections.  First, the State objects to 6 hours on April 6, 2004, described as "Reviewed and Signed Newspapers Motion."  In response, plaintiffs argue that the entries in the billing statement were transposed, and that Duffy actually spent .25 hour reviewing the motion and 6 hours preparing for trial.  Although plaintiffs' explanation is plausible, the entry for .25 hours "preparation for trial" is dated April 5, 2006, not April 6, 2006, and plaintiffs have provided no evidence supporting this assertion.  Accordingly, the court will presume that the records are accurate, and that Duffy spent 6 hours reviewing the motion.  The court finds that anything more than one hour is unreasonable to review and sign an 11-page memorandum.  (Docket 259).  Accordingly, the court excludes 5 of the hours requested.

Second, the State objects to 7 hours on September 30, 2005, that Duffy requests in his supplemental request.  The entry is labeled as "review brief, affidavits, bills, conference with Mike Abourezk, review declarations, multiple phone conferences with Bryan Sells."  The State argues that this entry

10

duplicates a previous billing of 3 hours on September 29, 2005, for the same tasks.  Based on the current records, the court cannot determine whether the entry on September 30, 2005, is duplicitous with the entry on September 29, 2005, or whether the hours expended were reasonable.  Accordingly, the court excludes 7 hours from Duffy's supplemental request.

As for the rest of the hours requested by Duffy, the court finds that the requested hours are reasonable.  The State's fees expert opined that Duffy's hours were appropriate and reasonable for local counsel.  (Docket 396-2, at ¶ 24).  Accordingly, the court will calculate Duffy's lodestar based on 321.61 hours, which represents 316.25 (321.25 – 5) hours in the initial request and 5.36 (12.36 hours – 7 hours) hours in the supplemental request.

The State objects to all of the hours submitted by McDonald.  The State argues that McDonald's efforts duplicated Sells's work, and thus, the court should exclude them.  In particular, the State argues that the time billed by McDonald for attending trial is unreasonable because there was no need for three attorneys to try this case.

If multiple attorneys represent a prevailing party, then that party may be able to recover a reasonable fee for each of the attorneys.  "The proper question is whether the application, for one or more attorneys, is reasonable . . . . " Schultz v. Amick, 955 F. Supp. 1087, 1115 (N.D. Iowa 1997).  "A court may reduce attorney hours, and consequently fees, for inefficiency or

11

duplication of services in cases where more than one attorney is used." A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995).  In some circumstances, three attorneys at trial will be reasonable.  See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 359 (8th Cir. 1997).

After reviewing the records submitted, the court finds that the majority of McDonald's time was reasonable and that McDonald generally did not duplicate the efforts of Sells.  The court will begin by discussing the trial.  The court acknowledges that in many cases three attorneys may be unreasonable. This case, however, was not like most cases.  Instead, this was a nine-day bench trial that involved many witness, hundreds of exhibits, and complex legal issues.  The complexity of the trial in this case is further indicated by the court's 144-page memorandum and order ruling on the State's liability under § 2.  (Docket 322).  McDonald actively participated in trial, including examining witnesses.  The court notes that plaintiffs' attorneys also had another large voting rights case in South Dakota scheduled for trial approximately two months after this case.  Based on the foregoing, the court finds that three attorneys was reasonable, and that McDonald's efforts at trial did not duplicate those of Sells or Duffy.  See Delph, 130 F.3d at 359.

After reviewing McDonald's requested hours, the court finds that there is some duplication warranting exclusion, however.  On December 15, 2002, and December 16, 2002, both McDonald and Sells attended the interviews of

12

the same witnesses, namely Elaine Quiver, Charlotte Black Elk, Jessica Two Bulls, James (John) Steele, and Black Horse.  The court finds that it was unreasonable for both McDonald and Sells to attend these interviews. Accordingly, the court will exclude 6.25 hours on December 15, 2002, and 9 hours on December 16, 2002, including travel time, associated with these interviews.  The court excludes these duplicated efforts from McDonald's time rather than Sells's time because Sells was lead counsel on the case.  (Docket 370-4, at 1).  In addition, McDonald and Sells both attended the deposition of Jeffrey Zax on May 19, 2003.  Once again, this was unreasonable duplicated efforts.  Accordingly, the court excludes 15.75 hours from McDonald's time for the deposition and associated travel time.  And the court excludes 1.75 hours on November 17, 2004, because the court cannot determine from this vague entry whether the time was spent creating itemized billing statements, which is unrecoverable.  See White, 935 F.2d at 970.  Accordingly, the court will calculate McDonald's lodestar based upon 371.7 hours (404.45 hours – 32.75 hours).

The final request is for Sells, the lead attorney in this case.  The State asserts several objections to the hours requested by Sells.  First, the State argues that the travel time to South Dakota for witness interviews and depositions was unreasonable because Duffy was located in South Dakota and could have performed many of these tasks.  The court disagrees that it

was unreasonable for Sells to attend these events.  Sells was the lead counsel in charge of the case while Duffy had a much more limited role as local counsel.  As lead counsel, it was reasonable for Sells to attend the interviews and depositions of the witnesses.  See Gradisher v. Check Enforcement Unit, Inc., No. 1:00-CV-401, 2003 WL 187416, at *4 (W.D. Mich. Jan. 22, 2003).

Second, the State argues that Sells expended an unreasonable amount of time preparing pre- and post-trial findings of fact and conclusions of law. Sells spent just over 200 hours preparing these documents.  The court finds that it was reasonable to spend this much time drafting these documents, which were over 200 pages long and were some of the most important documents in this case.  This amounts to approximately one page per hour. The court considers this reasonable, particularly in light of the hundreds of exhibits and thousands of pages of trial transcript that needed to be integrated into the document.

The court does exclude .5 hours on May 3, 2003, .75 hours on May 3, 2003, and .75 hours on May 16, 2003, all of which are labeled "prepared hours and expenses."  The court excludes these hours because they are too vague for the court to determine whether the time was spent creating itemized billing statements, which are a component of overhead and unrecoverable. White, 935 F.2d at 970.  The court excludes 1.9 hours on September 27, 2005, for the same reason.  The court also excludes 2.39 hours on

14

November 11, 2004, because this is a duplicate entry.  Finally, the court excludes 6.7 hours dated September 30, 2005, from Sells's supplemental fee request because his initial request already billed for that time.

Except for the foregoing, all other hours requested by Sells are reasonable considering the complexity of this case, which has been pending for over five years.  Accordingly, the court calculates Sells's lodestar using 1562.55, which represents 1519.89 hours (1526.18 hours – 6.29 hours) from the initial request and 42.66 hours (49.36 hours – 6.7 hours) from the supplemental request.

### C.    Lodestar

Based on the foregoing reasonable hourly rates and reasonable hours expended, the lodestar is calculated as follows:

| McDonald | 371.7 hours x $400 per hour | $148,680.00 |
| Duffy | 321.61 hours x $225 per hour | 72,362.25 |
| Sells | 1562.55 hours x $200 per hour | 312,510.00 |
| O'Connor | 115.25 hours x $75 per hour | 8,643.75 |
| Lunsford | 11.5 hours x $45 per hour | 517.50 |
| Total | | $542,713.50 |

The court now must determine whether to adjust the lodestar.  Plaintiffs do not seek an upward adjustment.  The State, however, argues that the court should decrease the lodestar because the billing statements submitted were

too vague to enable the court to determine whether the hours expended were reasonable.

As noted above, the court can adjust the lodestar after considering the Johnson factors, although most of the factors are considered in determining the proper lodestar amount.  Hensley, 461 U.S. at 434 n.9, 103 S. Ct. at 1940.  The Johnson factors are: the time and labor spent; the novelty and difficulty of the legal issues; the skill required to perform the legal services; the attorneys' opportunity cost in pursuing this case; the attorneys' expectation when starting the litigation; the time limitations imposed by the client or the circumstances; the amount at issue and the results achieved; the attorneys' experience, reputation, and ability; the undesirability of the case; the nature of the attorney-client relationship; and fee awards in similar cases. See Emery I, 132 F. Supp. 2d at 811.  The court also can decrease the lodestar if the billing records are too vague to enable the court to determine the reasonableness of a fee request.  See DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990).  The court remains mindful, however, that "[t]he most critical factor in assessing fees is the degree of success obtained."  Fish, 295 F.3d at 852.

Here, the court finds that all the appropriate Johnson factors were accounted for in the court's calculation of the lodestar.  See Hensley, 461 U.S. at 434 n.9, 103 S. Ct. at 1940.  The hourly rates account for the difficulty of

16

the legal issues associated with voting rights cases, the skill required by these cases, fee awards in other voting rights cases, and the experience and reputation of McDonald and Sells.  In addition, the reasonable hours expended account for the time and labor expended in this case.  The court finds that the remaining <u>Johnson</u> factors are not applicable.

The court also refuses to reduce the lodestar amount based upon inadequate billing entries because most of the billing entries submitted by plaintiffs are detailed enough to facilitate a review of the reasonableness of plaintiffs' fee request.  The court excluded the entries that lacked sufficient detail to permit meaningful review.

The court also finds that the extraordinary level of success achieved by plaintiffs' counsel makes the lodestar amount reasonable in this case. Plaintiffs prevailed on both their § 2 and § 5 claims.  In addition, the court adopted the remedial plan proposed by plaintiffs.  Plaintiffs have won every major legal dispute and achieved complete success in the litigation.  This extraordinary level of success warrants a full recovery of the lodestar amount as calculated herein.  <u>See</u> <u>Fish</u>, 295 F.3d at 852.

In addition, the attorneys' fees requested are reasonable because the State contested almost every issue in this case.  This litigation strategy is illustrated by the State's request that the court certify a question to the South Dakota Supreme Court on whether the State has the power to redraw the

legislative districts in light of the court's finding that the current districts violated § 2 of the VRA.  The South Dakota Supreme Court held that the State did in fact have the power to redraw the legislative districts.  Despite this ruling and the time and efforts expended in the lengthy certification process, the State chose not to propose a redistricting plan in the remedial phase.  The State's litigation strategy is further evidenced by the several times that the State sought and obtained leave to file briefs exceeding the page limit imposed by the District of South Dakota's local rules.  (Docket 117, 150, 185).  For instance, the State's memorandum supporting its motion for summary judgment was 94 pages long.  (Docket 118).  By filing longer briefs that contest each possible issue, the State forced the plaintiffs to expend additional time to respond.  Although the State has a right to contest every issue in this case, the State "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"  City of Riverside v. Rivera, 477 U.S. 561, 580 n.11, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (plurality opinion) (quoting Copeland v. Marshall, 641 F.2d 880, 904 (D.C. Cir. 1980)).  Based on the foregoing, the court finds an award of $542,713.50 plus sales tax of 6 percent to be reasonable.

## II.   Costs and Expenses

Plaintiffs also request costs and expenses in the amount of $71,615.66 in their initial request and $435.21 in their supplemental request.  Pursuant

18

to Fed. R. Civ. P. 54, the court generally awards costs to a prevailing party.
See Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 499 (8th Cir.
2002).  Taxable costs under Rule 54 are limited to those costs enumerated in
28 U.S.C. § 1920.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S.
437, 441, 107 S. Ct. 2494, 2497, 96 L. Ed. 2d 385 (1987).  In addition, a
prevailing party can recover reasonable out-of-pocket expenses incurred by
that party's attorney as part of a reasonable attorneys' fees award.  See
Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996).  Out-of-pocket
expenses are only recoverable, however, if they are the type that are normally
charged by attorneys to their clients.  See id.

    The State asserts several objections to the costs and out-of-pocket
expenses requested by plaintiffs.  First, the State argues that plaintiffs seek
reimbursement for expert witness fees exceeding the amount permitted by 28
U.S.C. §§ 1821 and 1920.  It is settled that §§ 1821 and 1920 limit witness
fees, including expert witness fees, to a $40-per-day attendance fee.  See W.
Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 87, 111 S. Ct. 1138, 1141, 113
L. Ed. 2d 68 (1991), overruled by statute on other grounds by 42 U.S.C.
§ 1988(c).  Recovery of expert witness fees exceeding $40 per day requires
"explicit statutory authority."  Id.  And § 1973l(e) does not enable prevailing
parties in a VRA case to recover expert witness fees exceeding $40 per day.

See Dillard v. City of Greensboro, 34 F. Supp. 2d 1330, 1347 (M.D. Ala. 1999),

vacated on other grounds by 213 F.3d 1347 (11th Cir. 2000).

Plaintiffs concede that § 1973l(e) does not empower the court to grant

expert witness fees that exceed the $40-per-day attendance fee permitted by

§ 1821.  Instead, plaintiffs argue that the fees requested are recoverable under

Fed. R. Civ. P. 26(b)(4)(C), which states that "[u]nless manifest injustice would

result . . . the court shall require that the party seeking discovery pay the

expert a reasonable fee for time spent in responding to discovery . . . ."

Plaintiffs argue that the expert witness fees sought are reasonable fees for

time that plaintiffs' experts spent preparing for discovery, namely preparing

for depositions and being deposed, and thus, Rule 26(b)(4)(C) provides explicit

statutory authority for recovery.  The court agrees.  See Trepel v. Roadway

Express, Inc., 266 F.3d 418, 426-27 (6th Cir. 2001); Emmenegger v. Bull

Moose Tube Co., 33 F. Supp. 2d 1127, 1135 (E.D. Mo. 1998).   Based on this

authority, the court finds that the following entries are reasonable and

recoverable: $1,425 on May 30, 2003; $775 on May 30, 2003;  $3,200 on

July 24, 2004; and $400 on December 20, 2004.

Plaintiffs also seek recovery of $4,237.84 in expert witness fees that

they paid Jeffrey Zax, the State's expert.  These fees arose out of Zax's

deposition.  Plaintiffs paid the fees per the requirements of Fed. R. Civ. P.

26(b)(4)(C).  Now, plaintiffs seek to recover from the State the amount that

they previously paid to Zax.  Plaintiffs argue that Rule 26(b)(C)(4) is an explicit

statutory authority permitting plaintiffs to recover the fees they paid Zax from

the State.

The court disagrees with this construction.  Rule 26(b)(C)(4) allocates

the financial burden of discovery of an expert witness on the party seeking

discovery.  In the case of Zax, plaintiffs, not the State, sought discovery, and

thus, Rule 26(b)(C)(4) places the financial burden of the expert fees

attributable to the discovery on plaintiffs.  In order to shift this financial

burden to the State, plaintiffs need statutory authority besides Rule

26(b)(C)(4).  See La. Power & Light Co. v. Kellstrom, 50 F.3d 319, 333 (5th Cir.

1995) (per curiam); cf. 8 Charles Alan Wright et al., Federal Practice and

Procedure § 2034 (2d ed. 1994).  Because expert witness fees cannot be

shifted pursuant to § 1973l(e), the court excludes the $4,237.84 requested for

Zax's deposition on May 19, 2003.

Plaintiffs seek $502.57 for research performed by Ruth Steinberger.

Defendants argue that this entry is for unrecoverable expert witness fees.

Plaintiffs respond by indicating that Steinberger is not an expert witness, has

never been designated as such, and has never testified.  Instead, she did

investigatory research for plaintiffs and was compensated for her time. The

court finds that this research time is a recoverable out-of-pocket expense that

is normally charged to the client, similar to paralegal or investigator fees.  Cf.

Jenkins ex rel. Agyei, 491 U.S. at 288, 109 S. Ct. at 2471 (permitting recovery of paralegal fees).  Accordingly, plaintiffs are entitled to recover $502.57 as part of a reasonable attorneys' fees under 42 U.S.C. § 1973l(e).

The State objects to the amount of witness fees paid to some of plaintiffs' other witnesses.  Plaintiffs submit requests for $167.75 on April 14, 2004, and $157.00 on April 16, 2004.  Under 28 U.S.C. § 1920, taxable costs include witness fees.  Section 1821 limits the amount of recoverable witness fees to a $40-per-day attendance fee plus travel expenses.  Plaintiffs state that these amounts equal the statutory attendance fee plus recoverable travel expenses.  Based on this representation, the court finds that the amounts requested are recoverable.

The State also objects to plaintiffs' recovery of plaintiffs' experts' travel expenses.  Plaintiffs request $246.76 incurred on May 9, 2003, and $2.64 incurred on May 9, 2003, for the lodging and meals of Steve Cole while attending his deposition in Washington D.C.  Cole is entitled to the same subsistence allowance as a federal employee—$225.  See 28 U.S.C. § 1821; see also U.S. General Services Administration Homepage, http://www.gsa.gov/Portal/gsa/ep/home.dotabId=O (last visited June 16, 2006) (stating per diem rate).  He also could recover the lodging taxes attributable to his stay.  See 41 C.F.R. § 301-11.27.  Here, the court finds that plaintiffs are entitled to recover the $225 for subsistence allowance of Cole.

22

The remaining $24.40 is excluded because the court cannot determine from the billing records how much, if any, of this expense is attributable to taxes. See White, 935 F.2d at 970.

The State also objects to plaintiffs' request for $599 on April 20, 2004, which is labeled "Research Design Associates, New York ground transportation and accommodations in Pierre." Plaintiffs explain that this represents $244 for ground transportation to the airport for Cole to testify at trial. This full amount is recoverable pursuant to 28 U.S.C. § 1821(3). Plaintiffs claim that the remaining $355 is for four nights lodging while Cole was in Pierre, South Dakota, for the trial. This full amount is recoverable because it is less than the subsistence allowance permitted under 28 U.S.C § 1821, which would be $390.50. Accordingly, plaintiffs are entitled to recover the full $599 billed on April 20, 2004.

The State also objects to $69.26 for express mail sent on March 3, 2003, and March 13, 2003. Cole incurred this mailing expense when the State requested documents. The court finds that this mailing expense is not a component of Cole's fee because fees compensate for the expert's time. Instead, this is an out-of-pocket expense that Cole would normally bill to plaintiffs' counsel, and that plaintiffs' counsel would in turn bill to their client. As such, the $69.26 is recoverable as a component of reasonable attorneys' fees.

23

The State objects to plaintiffs' use of express mail services.  The court finds that these expenses are reasonable considering that this case involved hundreds of documents, that plaintiffs' lead counsel was located in Atlanta, Georgia, that the State's counsel, local counsel, and many of the witnesses were located in South Dakota, and that the trial occurred in South Dakota.  In addition, the court finds that express mail is the type of out-of-pocket expense that attorneys typically bill to their client, making it recoverable.  The court does exclude eight express mail entries dated April 7, 2004.  Five of the entries are for $61.54 each, and the remaining three are for $72.11 each.  Because these entries are for identical amounts, the court cannot determine if there are duplicate entries for the same expense or multiple expenses of exactly the same amount.  Because the records are too vague to determine whether there are impermissible duplicate entries, the court excludes them.  See White, 935 F.2d at 970.  The court also excludes $68.46 on April 28, 2004, because it appears to be duplicate entry as well. The total excluded amounts of express mailing fees is $592.49.

The State also argues that several of the expenses are office overhead that would not typically be charged to client, and thus, are unrecoverable.  After considering the entries, the court finds that the following entries would typically be considered a component of overhead by local attorneys: $21.15 for a map on August 22, 2002; $124.92 for a mobile telephone on August 28,

2002; $154.00 for transcription of interviews on October 18, 2002; $14.82 for audiocassettes on December 19, 2002; $28.95 for a book on December 26, 2002; $7.95 for wireless phone on March 11, 2003; $30.17 for supplies on May 3, 2003; $21.10 for supplies on May 4, 2003; $17.02 for supplies on May 4, 2003; $0.25 for pay phone on May 5, 2003; $15.30 for supplies on May 11, 2003; $31.68 for supplies on January 27, 2004; $8.95 for internet access on January 27, 2004; $39.69 for supplies on April 11, 2004; $86.48 for supplies on April 11, 2004; $1.64 for supplies on April 16, 2004; $8.00 for internet access on April 18, 2004; $14.30 for supplies on April 19, 2004; $4.97 for supplies on April 21, 2004; $9.18 for supplies on April 25, 2004; $2.12 for supplies on April 26, 2004; $16.98 for Lexis Nexis research on March 11, 2005; $9.99 for internet access on March 19, 2005; and $50.29 for Lexis Nexis research on May 4, 2005.  Because these expenses are typically considered a component of office overhead and are not billed to the client, the court finds that they are not recoverable by plaintiffs here.  The total amount excluded as overhead is $719.90.

The State objects to being charged the full cost of airfare to South Dakota for O'Connor on January 31, 2001, because O'Connor also worked on a different case during her stay in South Dakota.  Plaintiffs acknowledge that O'Connor spent part of her time working on a different case during her stay, but argue that the primary purpose of the trip was this case.  Because

25

O'Connor worked on two cases while in South Dakota, the court finds that the airfare should be split evenly between the two cases—$370 per case. This is typically how local law firms would bill to recover this out-of-pocket travel expense. Accordingly, the amount of plaintiffs' request for expenses will be reduced by $370.

The State also raises several objections to miscellaneous expense requests. The court has reviewed the expense requests in their entirety. The court finds that the requests for lodging and meals are reasonable, including those specifically objected to by the State. The court does exclude, however, $25.21 requested for Sells's laundry dated May 11, 2003, May 17, 2003, May 18, 2003, and April 21, 2004. The court finds that laundry expenses are personal expenses that are not typically passed on to clients. The court also excludes $16.59 requested for drinks dated February 12, 2003, May 3, 2003, and May 18, 2003, because these expenses would not generally be passed through to the client. The court also excludes $38.47 requested in the supplement for entries dated August 29, 2005, and September 14, 2005. The court excludes these entries as duplicates of entries in the original request.

After considering all of the State's objections and reviewing the expense request in its entirety, the court excludes $5,986.43 from the original expense request and $38.47 from the supplemental expense request. All other expense requests are both reasonable and recoverable. Accordingly, the court

awards plaintiffs $65,629.23 in costs and out-of-pocket expenses from the first motion (Docket 370-1) and $396.74 in costs and out-of-pocket expenses from the supplement (Docket 406-2).

Based on the foregoing, it is hereby

ORDERED that plaintiffs' motion (Docket 370) for attorneys' fees and expenses is granted.

IT IS FURTHER ORDERED that plaintiffs are awarded attorneys' fees in the amount of $542,713.50 plus sales tax in the amount of $32,562.81.

IT IS FURTHER ORDERED that plaintiffs are awarded costs and expenses in the amount of $66,025.97.

Dated June 22, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

27